[S. F. No. 3044.   Department Two.—October 25, 1904.]

## JOHN H. DUNHAM, Appellant, v. JAMES S. ANGUS et al., Respondents.

BEACH AND WATER-LOTS OF SAN FRANCISCO—SALE UNDER EXECUTION— POWER OF LEGISLATURE — SUBSEQUENT SALE BY COMMISSIONERS OF FUNDED DEBT.—The city of San Francisco held its beach and water-lot property as a private proprietor, and such property was subject to execution for the city's debt, and remained subject to execution therefor until the debt was paid, which right the legislature could not impair. An action for a prior debt of the city, begun before the passage of the act of May 1, 1851, which provided for a conveyance of such property to the commissioners of the funded debt, and a sale of water-lots under execution upon the judgment in such action, made after the passage of

that act, will prevail over a subsequent deed of the same property by the commissioners of the funded debt, executed under the authority given by that act.

ID.—CASE APPLIED AND AFFIRMED.—The case of *Smith* v. *Morse*, 2 Cal. 524, applied and affirmed, as controlling authority.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

E. G. Knapp, for Appellant.

W. S. Goodfellow, for Respondents.

McFARLAND, J.—Plaintiff appeals from a judgment in favor of defendants and from an order denying his motion for a new trial.

The action is to quiet title to a lot of land which is a part of what is known as the beach and water-lots of the city of San Francisco. The appellant claims title through a sale of the property in contest by the commissioners of the funded debt created by an act of the legislature approved May 1, 1851. (Stats. 1851, p. 387.) Respondents claim under what is known as the "Peter Smith title," which, as against the alleged title of the said commissioners of the funded debt, was a prominent subject of litigation during the first years of the history of California as an American state. The various statutes, ordinances, and other facts touching the controversy are fully set forth in the report of the case of *Smith* v. *Morse*, 2 Cal. 524, and need not be here stated in detail. For the purpose of this decision the following brief statement is sufficient: In 1850 the city of San Francisco passed an ordinance under which certain of its property, including the lot involved in this action, was conveyed to certain trustees styled the commissioners of the sinking fund, who were given power to sell, etc. On May 1, 1851, the act of the legislature above referred to creating the commissioners of the funded debt was passed, and by that act the said commissioners of the sinking fund were directed to convey all of the property held by them under said ordinance to the commissioners of the funded debt, which was done. The commissioners of the funded debt were

authorized to sell the property, and they did, on September 20, 1852, sell and convey the lot here in question to Joseph Hetherington, from whom the appellant has a clear deraignment of title. But in 1850 and 1851 Peter Smith was a creditor of the city in large amounts; and on January 14, 1851,—which was before the passage of said act of May 1, 1851,—he commenced an action on a part of the indebtedness of the city to him, and on September 6, 1851, he recovered a judgment against the city for the sum of about fourteen thousand dollars; and execution was regularly issued on said judgment under which the property here in contest was sold on January 30, 1852, to David S. Douglass, who afterwards received the sheriff's deed to the same; and whatever interest in the property Douglass thus obtained passed by mesne conveyances and vested in the defendants in this present action. Peter Smith had also in 1851 commenced two other actions for other parts of this indebtedness, in which judgments had been rendered prior to May 1, 1851.

The question in the case at bar, therefore, is, Which is the better title—the one claimed by appellant under the sale from the commissioners of the funded debt, or the other claimed by respondents under the execution sale on the Peter Smith judgment of September 6, 1851? And we think that this question was definitely settled against the contentions of the appellant by the case of *Smith* v. *Morse,* above noticed—2 Cal. 524.

*Smith* v. *Morse* was an action brought by Peter Smith against Morse and others constituting the said commissioners of the funded debt, in which plaintiff sought to have it adjudged that, as against him as a creditor of the city, the commissioners had no title to the water property which had been levied upon and sold under his judgments, and to enjoin them from asserting any such title, and thus injuriously affecting the value of his interest therein. The judgment was in favor of Smith in the trial court, and upon appeal it was affirmed. It is contended by appellant in the case at bar that the case of *Smith* v. *Morse* reached and determined only the rights of Smith under his first two judgments, which had been rendered prior to May 1, 1851, when the act creating the commissioners of the funded debt was passed. But in his amended and supplementary complaint he expressly set up his rights under the third judgment of September 6, 1851, and asked a similar

remedy as to those rights. The court clearly dealt with all three of the judgments, and, indeed, Smith's rights under the last judgment seemed to be those principally involved, for it seems from the statement of the case in the record that the two prior judgments had been satisfied; and the trial court stated in its finding that "a part of the judgment aforesaid rendered on the 6th day of September, 1851, remains unsatisfied." The preliminary injunction restraining the commissioners from selling, etc., was by the final judgment made perpetual. The judgment was affirmed on appeal; and in an elaborate opinion the appellate court held first that the ordinance above mentioned by which it was attempted to transfer the property to the commissioners of the sinking fund was invalid for want of authority in the common council to do so, and consequently the deed from the said commissioners to the commissioners of the funded debt conveyed nothing. But as it was contended that the act of May 1, 1851, itself had the effect of a conveyance to the commissioners of the funded debt, the court took up that branch of the subject, and held that, assuming such to be the effect of that act, the act, as against Smith, was unconstitutional and void, because impairing the obligation of a contract. It was declared that the city held that water-lot property as a private proprietor, and it was therefore liable for the city's debt, and that "such property as was subject to execution at the time the debt was contracted must remain subject to execution until the debt is paid." The facts as stipulated in the case at bar seem to bring it entirely within the decision in *Smith* v. *Morse;* and as during the long time since the rendition of that decision many titles have no doubt been taken upon the faith of it, we have no disposition to now question it. The respondents over the objection of appellant were allowed to introduce the record in the case of *Smith* v. *Morse* as it appears in the report of the case in 2 Cal. 524, and appellant contends that this ruling of the court was erroneous; but that ruling was immaterial, for the case is controlling as an authority, even if appellant is not technically estopped by it.

The judgment and order appealed from are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.